UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LEANN ARCHIBALD                          :
                                         :
          v.                             :          C.A. No. 08-272S
                                         :
MICHAEL J. ASTRUE                        :
Commissioner of the Social Security      :
Administration                           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

   This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her

Complaint on July 21, 2008 seeking to reverse the decision of the Commissioner.  On February 27,

2009, Plaintiff filed a Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing

the Commissioner's Final Decision.  (Document No. 7).  On April 10, 2009, the Commissioner filed

a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 11).

   This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the legal

memoranda filed by the parties and independent legal research, I find that there is not substantial

evidence in this record to support the Commissioner's decision and findings that Plaintiff is not

disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED

and that Plaintiff's Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 7) be GRANTED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 5, 2005, alleging disability since January 1, 2004.  (Tr. 160-163).  The application was denied initially (Tr. 125) and on reconsideration.  (Tr. 126).   Plaintiff requested an administrative hearing.   (Tr. 140).   On December 11, 2007, Administrative Law Judge Martha H. Bower ("ALJ") held a hearing at which Plaintiff, represented by counsel, a vocational expert ("VE") and a medical expert ("ME") appeared and testified.  (Tr. 32-65).  The ALJ issued a decision unfavorable to Plaintiff on December 28, 2007. (Tr. 22-31).  The Appeals Council denied Plaintiff's request for review on May 29, 2008.  (Tr. 6-8).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that there is not substantial evidence in the record that supports the ALJ's evaluation of the medical opinions which differ from her residual functional capacity ("RFC") finding. Plaintiff also argues that there is not substantial evidence in the record to support the ALJ's credibility finding.  Plaintiff finally argues that the ALJ failed to comply with Social Security Ruling 00-4p.

The Commissioner disputes Plaintiff's claims and argues (1) that the ALJ properly considered the medical source opinions or record; (2) that there is substantial evidence in the record to support the ALJ's credibility findings; and (3) that the ALJ properly found that Plaintiff could perform other work that existed in significant numbers in the national economy.

### III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. <u>Seavey</u>, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.   20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.   20 C.F.R. § 404.1520(d).   Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.   20 C.F.R. § 404.1520(e).   Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).   Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.   Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.   Seavey, 276 F.3d at 5.   The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.   Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).   If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment."   Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.   42 U.S.C. § 423(d)(5)(A).   The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.   20 C.F.R. § 404.1528.   In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)      The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)      Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)      Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)      Treatment, other than medication, for relief of pain;
>
> (5)      Functional restrictions; and
>
> (6)      The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).   An individual's statement as to pain is not, by itself, conclusive of disability.   42 U.S.C. § 423(d)(5)(A).

2.      **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was thirty-eight years old on the date of the ALJ's decision. (Tr. 160). Plaintiff received her GED and has previous work experience as a peer mentor. (Tr. 179, 184). From 1981 to 2007, Plaintiff has reported earnings in only nine of those years and annual earnings over $1,000.00 in only three years (2001, 2003 and 2004). (Tr. 173). Plaintiff alleges disability due to status post scoliosis fusion[1], cervical facet orthropy and scapular strain. (Tr. 178).

---

[1] Due to significant scoliosis, steel "Harrington" rods were implanted along Plaintiff's spine at the age of fourteen. (Tr. 352). This procedure also involved a spinal fusion. (Tr. 56). Dr. Fuchs testified that this procedure is generally not used today and that the fusion can cause "degeneration at the levels above and below the fusion because there are greater forces exerted on those areas that are not fused." Id.

On August 17, 2005, Dr. Joseph Callaghan, a Disability Determination Services ("DDS") physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit each for six hours; push/pull with no limitations; frequently balance, stoop, and climb ramps and stairs; and occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds.  (Tr. 296-297).  On September 25, 2006, Dr. Seth Green affirmed that opinion.  (Tr. 370-371).

On April 17, 2006, Ryan Marzetta, a Physical Therapist, reported that Plaintiff could not maintain any position for longer than twenty minutes without her symptoms increasing.  (Tr. 83, 352).  Mr. Marzetta further opined that he did not consider Plaintiff totally disabled, but that he considered her unfit for an eight-hour workday.  Id.

On November 27, 2007, Dr. Stephen McCloy opined that Plaintiff was limited to sitting for two hours at one time, standing for zero hours at one time, and walking for zero hours at one time in an eight-hour workday; working two hours per day; never carrying any amount of weight; lifting no more than ten pounds occasionally; performing no pushing and pulling with the arms and hands, and occasional reaching, simple grasping, fine manipulation, and over-the-shoulder work; performing no operation of controls with the legs and feet, bending, squatting, kneeling, and crawling; and no exposure to unprotected heights, moving machinery, noise, vibration, extreme temperatures, dust, fumes, and gases.  (Tr. 382-388).

On November 30, 2007, Dr. Daniela Turacova, Plaintiff's Primary Care Physician, opined that Plaintiff suffered from thoracic scoliosis that significantly limited her ability to perform basic work activities; caused severe pain and limitations in her ability to perform daily activities; caused a moderately severe reduction in attention, concentration, and productivity in a competitive work

setting; and prevented her from sustaining competitive employment on a full-time, ongoing basis. (Tr. 76-78, 397-399).

On December 10, 2007, Dr. Turacova opined that Plaintiff was limited to performing part-time work. (Tr. 72-73, 400-401).  Plaintiff testified that she could not work because she suffered from neck and back pain.  (Tr. 35-36, 41). She stated that she spent her days caring for her personal needs, vacuuming, washing dishes, preparing her children for school, preparing meals, helping her children with their homework and reading. (Tr. 39-41, 45, 46). Plaintiff testified that she could walk a block before she had to stop and rest and stand for twenty minutes before having to sit down. (Tr. 45).

### A.      The ALJ Did Not Properly Evaluate the Opinions of the Medical Expert

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ concluded that Plaintiff's scoliosis and degenerative disc disease, status-post spinal fusion, and migraine headaches, are "severe" impairments under 20 CFR § 416.920(c) but not of "Listing-level" severity.  (Tr. 24-25). The ALJ assessed an RFC for light work with postural limitations and a moderate limitation in maintaining concentration, persistence and pace.  (Tr. 25).  Based on this RFC and testimony from the VE, the ALJ rendered a non-disability finding at Step 5.

At the ALJ's request (Tr. 149-150), a Medical Expert, Dr. Louis Fuchs – a Board Certified Orthopedic Surgeon, reviewed Plaintiff's medical records and testified at the hearing.  (Tr. 47-48, 53-60).  The ALJ's use of a medical expert is discretionary.  20 C.F.R. § 416.927(f)(2)(iii); see also Hodgkins v. Barnhart, 2004 WL 1896996 (D. Me. Aug. 25, 2004).  However, when such opinions are obtained, they must be evaluated in accordance with the general rules for evaluating medical source opinions.  Id.  The letter inviting Dr. Fuchs to testify told him that his "testimony will be

primarily for clarification or interpretation of the medical evidence of record" and that he "<u>will be</u> <u>requested</u> to furnish the bases for [his] opinions, particularly if there appears to be a conflict in the evidence." (Tr. 150), (emphasis added).

The ME's opinions conflict with the ALJ's RFC assessment. The ALJ briefly discussed Dr. Fuchs' testimony in her decision and gave it "little probative weight." (Tr. 27, 29). She faulted Dr. Fuchs for not offering a "specific, detailed rationale" for his RFC opinion. (Tr. 29). The ALJ asked Dr. Fuchs a total of four questions (Tr. 47-48, 60) and never "requested [that he] furnish the bases for [his] opinion, particularly if there appears to be a conflict in the evidence." (Tr. 150). Dr. Fuchs agreed with most of the limitations opined by Dr. Turacova (Tr. 55) and noted that Plaintiff has restricted range of motion due to the scoliosis procedure (Tr. 48), and her MRI findings were consistent with active degeneration. (Tr. 57). Dr. Fuchs also testified that Plaintiff's testimony regarding her abilities and daily pain were "consistent with the records." (Tr. 58).

The ALJ concluded that Plaintiff could perform a limited range of light work. (Tr. 25). Dr. Fuchs agreed with the sedentary limitations opined by Dr. Turacova (Tr. 400) except that he did not agree that Plaintiff was limited to only one hour of standing per day. (Tr. 48). Dr. Fuchs opined that Plaintiff could cumulatively stand for at least two hours in a workday but should have the option to sit and stand at will. (Tr. 54).

The ALJ's reasons for rejecting Dr. Fuchs' opinion are conclusory and lack sufficient support in the record. A testifying ME, such as Dr. Fuchs, generally does not prepare a written report to justify his opinions. His testimony is his report, and his testimony is guided by the questions he is asked. As noted above, the ALJ only asked Dr. Fuchs four questions and never asked him for the "specific, detailed rationale" for his opinions which the ALJ found lacking. (Tr. 29, 47-

48).  The ALJ could have done so and thus the absence of such information was arguably due to actions of the ALJ and not omissions of the ME.  The ALJ also rejected Dr. Fuchs' opinions because he acknowledged that Plaintiff "was without neurological deficit." (Tr. 29).  However, the ALJ cites no medical support in the record to show that this acknowledgment would permit the performance of light work.  Thus, it is not supported by substantial evidence.  While an ALJ is, of course, not required to accept the opinions of a testifying ME, he or she should elicit the basis for the ME's opinion and, if they are not supported by or consistent with the record, the ALJ should provide more than a conclusory explanation.

The ALJ chose to favor the 2005 opinion of Dr. Callaghan over the 2007 testimony of Dr. Fuchs.  (Tr. 28-29).  While neither examined Plaintiff and both relied upon a review of medical records, Dr. Fuchs necessarily had the benefit of access to over two years of additional treatment records (including x-ray and MRI reports) which Dr. Callaghan could not have reviewed.  It is the ALJ's function to weigh conflicting medical evidence.  However, a medical opinion based on a more complete record has, at least, the potential for greater accuracy than one based on a more limited record.  See Alcantara v. Astrue, 2007 WL 4328148 at *1 (1st Cir. Dec. 12, 2007) (per curiam) (noting the value of a "medical advisor's or consultant's assessment of the full record").  Although the ALJ was not obligated to credit Dr. Fuchs' 2007 opinion over Dr. Callaghan's 2005 opinion, she did not provide a sufficient explanation of her rationale for not doing so in this case.  The ALJ also failed to even comment on Dr. Turacova's late 2007 RFC opinion (Ex. 24F) which Dr. Fuchs believed was "rather complete in what appears reasonable as far as the work abilities of [Plaintiff]" and with which he "essentially" agreed with one exception.  (Tr. 48, 55).

**B.     The ALJ's Conclusion that the VE's Testimony Was Consistent With the Dictionary of Occupational Titles is Not Supported by Substantial Evidence**

Plaintiff also argues that remand is required because the ALJ violated her administrative responsibility to ask the VE if his testimony is consistent with the Dictionary of Occupational Titles ("DOT").  SSR 00-4p requires that an ALJ affirmatively ask a VE if his or her testimony is consistent with the occupational information contained in the DOT.  It is undisputed that the ALJ did not make this inquiry.  Plaintiff offers no evidence or argument that the VE's testimony in fact contradicted the DOT.  Rather, Plaintiff essentially seeks remand based solely on the technicality of failing to ask the question.

Although the First Circuit has not addressed this particular issue, other courts in this Circuit have held that "the mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the [VE's] testimony were in fact consistent with the DOT." Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264 (D. Me. June 24, 2004).  See also Wilcox v. Barnhart, No. Civ. 03-408-PB, 2004 WL 1733447 (D.N.H. July 28, 2004).  In this case, the VE's testimony before the ALJ was relatively straightforward.  (Tr. 60-65).  Plaintiff's counsel cross-examined the VE and has not presented any evidence of a conflict or other prejudicial error. Since Plaintiff has not argued or identified any such inconsistency, her argument is purely technical and could be characterized as harmless error.  Giles v. Barnhart, No. 06-28-B-W, 2006 WL 2827654 at *3 (D. Me. Sept. 29, 2006) (ALJ's failure to ask the SSR 00-4p question to the VE is harmless where claimant could return to past relevant work "as she performed it.").

This case is, however, distinct from other cases in which this Court has found violations of SSR 00-4p to be harmless error.  Here, although the ALJ did not ask the VE about consistency with the DOT, she expressly concludes in her decision that the VE's testimony was in fact "consistent with the information contained in the [DOT]."  (Tr. 30).  The ALJ cites no support for this

-16-

conclusion.  Since the ALJ did not ask the VE, it is unclear if this conclusion was included as a

drafting oversight or if the ALJ had some source for this conclusion independent of asking the VE.

If the ALJ had an independent source, she can identify it on remand.  If the conclusion was included

as a drafting oversight, the ALJ can correct it on remand.  Either way, the record does not contain

any support for the ALJ's conclusion.  Because the ALJ lacks the expertise to opine on consistency

between the VE's testimony and the DOT, the conclusion is not supported by substantial evidence.

If this were the only issue with the ALJ's decision, the Court would further evaluate this argument

under a harmless error analysis.  However, since the Court has found error as to the ALJ's evaluation

of Dr. Fuchs' opinions, this provides an additional basis for remand.[2]

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 10) be DENIED and that Plaintiff's

Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's

Final Decision (Document No. 7) be GRANTED.  I further recommend that Final Judgment enter

in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this

decision.

Any objection to this Report and Recommendation must be specific and must be filed with

the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-

---

[2]  Although Plaintiff raises other grounds for remand, the Court does not believe it would be productive or efficient to address those additional arguments, as the grounds addressed herein provide an adequate basis for remand.

-17-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 26, 2009